UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA FOLTS,

          Plaintiff,

v.

Case No. 10-CV-13774

HON. GEORGE CARAM STEEH

SOUTH LYON SENIOR CARE
AND REHAB CENTER, L.L.C.,

          Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 22, 2010, plaintiff Laura Folts filed this suit against her former employer, defendant South Lyon Senior Care and Rehab Center, L.L.C., alleging: (1) interference with the exercise of her rights under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq.; (2) retaliation for the exercise of her FMLA rights; and (3) intentional infliction of emotional distress.  Defendant filed a motion for summary judgment on plaintiff's claims.  The motion has been fully briefed and the court held oral argument.  For the reasons that follow, the court DENIES in part and GRANTS in part defendant's motion for summary judgment.

BACKGROUND

In January 2000, plaintiff began working as a housekeeper for the long-term care facility that later became South Lyon Senior Care and Rehab Center.  After a year or two, she moved to a laundry position.  She picked up the soiled laundry, washed the laundry, dried the laundry, and folded the clean laundry.

Throughout her employment, plaintiff signed acknowledgments of receipt of

employee handbooks and policies. The "Attendance, Punctuality and Dependability" policy in the handbook effective at all times relevant to this suit states:

> Because the Company depends heavily upon its employees, it is important that employees attend work as scheduled. Dependability, attendance, punctuality, and a commitment to do the job right are essential at all times. As such, employees are expected at work on all scheduled work days, during all scheduled work hours and to report to work on time. Moreover, an employee must notify their supervisor or the Human Resources Department as far in advance as possible, but not later than two hours before their scheduled starting time if expected to be late or absent. This policy applies for each day of absence, unless an alternate schedule is approved by the employee's supervisor or manager.

Defendant's attendance policy states:

> Absences due to illnesses or injuries which qualify under the Family and Medical Leave Act (FMLA) will not be counted against an employee's attendance record. Medical documentation within the guidelines of the FMLA may be required in these instances.

The policy also sets forth the parameters for disciplinary action relative to attendance and tardiness violations.

In September 2008, plaintiff's husband was diagnosed with Legionnaires' Disease and was hospitalized for a brief period of time. Weeks after his release from the hospital, he suffered a stroke. Plaintiff was granted FMLA/PTO time for the periods of October 10, 2008 to October 24, 2008 and November 12, 2008 to December 12, 2008 to care for her husband. Between January 1 and March 3, 2009, plaintiff was absent on nine workdays, three days due to her husband's illness and six days due to her own health issues. On March 3, 2009, defendant's human resources manager discussed FMLA leave with plaintiff and provided plaintiff with a letter and a copy of defendant's FMLA policy. The human resources manager suggested plaintiff apply for intermittent leave. On March 6, 2009, plaintiff signed, and had her husband's nursing home facility complete, the Certification of

2

Health Care Provider for Family Member's Serious Health Condition Form WH-380-F.  On March 31, 2009, plaintiff was approved for intermittent FMLA leave.

Due to her husband's illness, plaintiff took three days of leave in April 2009, one in May 2009, three in June 2009, and one in July 2009.  All of these days were approved as FMLA absences by her supervisors.  On July 29, 2009, defendant's human resources manager reminded plaintiff by letter of defendant's requirement that she bring in a doctor's note for each FMLA absence.  The letter states that defendant had not received such verification from plaintiff and stated that if the information was not provided within the next week, defendant would "no longer approve your absences as FMLA days."  On August 12, 2009, the director of social work at plaintiff's husband's care facility wrote a letter indicating plaintiff's husband "was admitted to the hospital on 6/24 and stayed there until 6/29/09.  Resident also had a Neurology appointment outside of the facility on 7/21/09."

Plaintiff took seven days of leave in August 2009, all of which were approved as FMLA absences by plaintiff's supervisors.  As noted on the August 10, 2009 absence report, plaintiff was to provide written confirmation from the hospital regarding her husband's hospitalization.  Plaintiff provided letters from the hospital dated August 11 and 18, 2009, noting her husband's hospitalization.

Plaintiff took one day of leave in September 2009 and two days in October 2009 due to her husband's illness.  These absences were approved as FMLA absences by plaintiff's supervisors.  Plaintiff provided an October 20, 2009 letter from her husband's care facility explaining the reasons for the absences.

In November 2009, plaintiff took two days off for her own illness.  These absences were approved by her supervisors.

In addition to one day for her own illness, plaintiff took nine days of leave in December 2009 for her husband's illness. These days were approved as FMLA absences according to the absence reports completed by plaintiff's supervisors.

On December 9, 2009, on a day when plaintiff called off work to care for her husband who was in the hospital in Lansing, her supervisor testified she observed plaintiff driving by defendant's facility at 1:25 p.m.

On or around December 10, 2009, when plaintiff was with her husband at the hospital, plaintiff's manager called her home and requested that she report to work on December 12 and 13, 2009 because no one was available to cover her shift. Plaintiff reported for work on those two days.

On or around December 10, 2009, defendant provided plaintiff with a blank certification form for FMLA leave. Plaintiff completed her portion of the form, had the doctors at the hospital complete the rest, and returned the completed form to defendant on December 16, 2009. She testified that she did not understand this form was a request for a recertification.

On December 16, 2009, plaintiff received two disciplinary written warnings and a one-day suspension. The first warning was issued because plaintiff failed to give the minimum two hours notice for her December 4, 2009 FMLA day. The second warning was issued for plaintiff failing to complete her job duties before leaving work on December 3, 2009. Plaintiff received a one-day suspension for coming to work late three times over the prior three weeks.

On December 17, 2009, defendant mailed a letter to plaintiff regarding the certification form she submitted the prior day. The letter stated "I am writing to inform you

4

that the medical certification you provided on December 16, 2009 was not completed to the degree needed for us to qualify your need for FMLA leave.  In order to give consideration to your leave request, we will need some additional information."  The letter listed the information requested, including the care plaintiff would be providing during the leave, how frequently the care is required, the duration of the care, how long the condition will last, and dates of planned treatments requiring time off of work.  The letter requested the information within seven business days from the date plaintiff received the letter.  Plaintiff testified she did not see the letter for three or four days.  On December 23, 2009, plaintiff returned to work.

On December 30, 2009, defendant's human resources manager asked plaintiff if she had the additional information needed to approve her nine December absences as FMLA leave.  Plaintiff responded "nope" and indicated she had not taken it to the doctor yet. Plaintiff confirmed that she read the December 17, 2009 letter and understood that the requested information was to be returned within seven business days.  She did not request more time to obtain the information or ask for any assistance to get the information.  As a result of her failure to provide the additional information, her FMLA request was not approved and her nine December absences were deemed unexcused.  Pursuant to the attendance policy, plaintiff's employment was terminated.

In her complaint, plaintiff alleges interference and retaliation under the FMLA and intentional infliction of emotional distress under Michigan common law.  Plaintiff argues defendant unlawfully misconstrued and misapplied the FMLA requirements as they apply to "intermittent leave" by enforcing more stringent requirements than those of the FMLA and then terminating her when she failed to meet those more stringent requirements.

5

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean

6

v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  Anderson, 477 U.S. at 248, 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  Id.

ANALYSIS

**Plaintiff's Interference Claim**

To establish an interference claim based on the FMLA, a plaintiff must demonstrate: (1) she was an eligible employee; (2) the defendant was an employer as defined in the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled.  Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

Plaintiff argues genuine issues of material fact exist as to whether defendant interfered with plaintiff's exercise of her right to intermittent medical leave when: (1) defendant imposed requirements in excess of those set forth in the FMLA and its implementing regulations; (2) rejected her legally sufficient recertification; (3) failed to provide plaintiff with a reasonable amount of time to furnish additional medical information; (4) failed to provide plaintiff with warning that termination would result if she failed to furnish additional medical information; and (5) called plaintiff at home while she was on intermittent leave and requested that she report for work.  Defendant argues plaintiff cannot establish an interference claim because plaintiff failed to provide the information requested in defendant's December 17, 2009 letter, which was necessary for her leave recertification.

First, plaintiff claims defendant interfered with her right to intermittent leave under

the FMLA by applying an attendance policy and procedures more stringent than the requirements reflected in the FMLA and its implementing regulations. 29 C.F.R. §825.308(a) provides "[a]n employer may request recertification no more often than every 30 days and only in connection with an absence by the employee, unless paragraphs (b) or (c) of this section apply." Plaintiff argues defendant violated this section by requesting recertification more often than every thirty days.

On March 6, 2009, plaintiff and her husband's care facility completed the certification form, which indicated that the duration of her husband's condition was "unknown." The Leave of Absence Application completed by plaintiff did not include an end date. Defendant approved plaintiff's request on March 31, 2009. Plaintiff argues she reported her absences with as much notice as possible from March 31, 2009 going forward and that every request was approved. According to defendant's policies, plaintiff was to produce a doctor's note or recertification[1] every time she exercised her right to FMLA leave, even if it was less than 30 days after the last absence. Plaintiff notes eight instances in which she was required to provide recertification (a doctor's note) for an absence taken less than 30 days after the last recertification. Plaintiff argues defendant's policy requiring a verification for each absence is more stringent than the requirements set forth in the FMLA and its implementing regulations. However, as defendant notes, defendant did not count those eight instances identified by plaintiff as absences. Plaintiff was not terminated as a result of non-compliance with the policy which she claims exceeds the FMLA requirements.

---

[1] While defendant did not use the term "certification" or "recertification", a demand for a doctor's note has been considered a request for a certification or recertification under the FMLA. See Smith v. CallTech Comm., LLC, No. 07-144, 2009 WL 1651530, *7 (S.D. Ohio June 10, 2009).

8

Therefore, defendant argues, plaintiff was not harmed as a result of the policy and cannot assert an interference claim based on the policy. The court agrees and finds plaintiff does not have an interference claim on this basis.

Second, plaintiff argues defendant interfered with her right to leave when it rejected her legally sufficient recertification. 29 U.S.C. §2613(b) provides certification is sufficient if it contains the date on which the health condition commenced, the probable duration of the condition, the appropriate medical facts regarding the condition, and a statement that the employee is needed to care for the family member and an estimate of the amount of time needed. Plaintiff indicated she anticipated the episode would last for a month and that she was needed at the hospital because her husband was unable to communicate. The hospital described her husband's medical condition. Defendant argues plaintiff's attempted recertification was "vague" but fails to explain which information she provided is vague or otherwise identify specific ways in which she did not comply with the statute. Defendant also claims it had reason to suspect plaintiff was abusing her FMLA leave, as she was seen driving by the facility on a day and at a time when she represented she was visiting her husband in a hospital not even remotely near the facility. Defendant claims plaintiff failed to provide the necessary information for the December 2009 recertification, her FMLA request was denied, her absences were considered unexcused absences, and she was terminated for violating the attendance policy. Plaintiff was fired as a result of the December 2009 attempted recertification and defendant fails to explain how the recertification was insufficient. Viewing the evidence as a whole, and in the light most favorable to plaintiff, the court finds a genuine issue of material fact on plaintiff's claim that defendant interfered with her rights when it rejected her December 2009 recertification.

9

Third, plaintiff claims defendant interfered with her intermittent leave when it failed to provide her with a reasonable amount of time to furnish additional medical information in connection with the recertification. Defendant's December 17, 2009 letter requested the additional information within seven business days of plaintiff's receipt of the letter. 29 C.F.R. §825.305(b) provides the employer must provide the employee with "seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any deficiency." Plaintiff argues the period of seven business days provided by defendant was not "practicable under the particular circumstances" present in her case. She did not return to work until six days after the letter was sent and she did not have the opportunity to drive to the hospital to obtain the additional documentation. Defendant notes that it waited thirteen days to follow up on the letter, so even if plaintiff did not review the letter for several days she still had seven calendar days to review it and comply. In addition, plaintiff could have obtained the information from the hospital by facsimile or could have sought an extension on the time provided to respond. Plaintiff did not even attempt to comply with the requests set forth in the letter. Thus, the time period for compliance set forth in defendant's December 17, 2009 letter cannot support a claim of interference in this case.

Fourth, plaintiff claims defendant interfered with her rights to intermittent leave by failing to provide adequate warning in the letter that her failure to furnish additional medical information would result in termination. Plaintiff cites 29 C.F.R. §825.300(c), which provides "[e]mployers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." However, as defendant notes, this provision only applies to an "eligibility

10

notice" and the December 17, 2009 letter is not an "eligibility notice" under the FMLA. Plaintiff also cites 29 C.F.R. §825.305(d), which states "[a]t the time the employer requests recertification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification...This provision will apply in any case where an employer requests a certification permitted by these regulations, whether it is the initial certification, a recertification, a second or third opinion, or a fitness for duty certificate..." Plaintiff argues defendant's failure to provide adequate warning in the letter prevents it from relying on her failure to furnish additional information as a reason for denying FMLA leave. Defendant argues that it adequately advised plaintiff with the statement in the letter advising that the information was necessary "[i]n order to give consideration to your leave request." Defendant argues plaintiff should have known, from this statement, that without the requested information defendant would not be able to give consideration to plaintiff's leave request, and consequently her absences would be deemed unexcused. Viewing the evidence as a whole, and in the light most favorable to plaintiff, the court finds a genuine issue of material fact on plaintiff's claim that defendant interfered with her rights by failing to provide adequate warning regarding the December 2009 recertification.

Finally, plaintiff argues defendant interfered with her right to intermittent FMLA leave when plaintiff's supervisor called her home when she was at the hospital with her husband and told her son that she would have to report for work on December 12 and 13, 2009 because no one was available to cover her shifts. Contacting an employee regarding work-related matters and requesting that an employee perform work during the leave period may constitute interference with the exercise of FMLA rights. Arban v. West Pub. Corp, 345

F.3d 390, 402-03 (6th Cir. 2003); Kesler v. Barris, Sott, Denn & Driker, PLLC, No. 04-40235, 2008 WL 1766667, *13 (E.D. Mich. April 17, 2008). Defendant argues the supervisor's response to plaintiff's last-minute request to take her weekend shifts off does not rise to the level of interference with FMLA rights. Defendant instead argues plaintiff's repeated failure to provide adequate notice in accordance with defendant's policies violated the FMLA's notice requirements. 29 C.F.R. §825.303 states "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave." Defendant's policy requires at least two hours notice for absences. Defendant argues plaintiff repeatedly violated that policy. In this instance, it appears plaintiff was scheduled to work December 12 and 13, 2009. It is unclear from the deposition testimony and documents if, or when, plaintiff called in to take December 12 and 13, 2009 off as FMLA leave. The court finds defendant failed to demonstrate that plaintiff did not claim December 12 and 13, 2009 as part of her FMLA leave and thus is not entitled to summary judgment on plaintiff's claim that defendant interfered with her rights by calling her at home and requesting she work those two days.

**Plaintiff's Retaliation Claim**

Retaliation claims under the FMLA can be established by direct or circumstantial evidence. Gibson v. City of Louisville, 336 F.3d 511, 513-14 (6th Cir. 2003). Retaliation claims based upon circumstantial evidence are evaluated under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and

require as a *prima facie* case that a plaintiff show: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) a causal connection exists between the exercise of the FMLA right and the adverse employment action. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314 (6th Cir. 2001). The Sixth Circuit has summarized the burden shifting as follows:

> Under the McDonnell Douglas burden-shifting framework, once the plaintiff establishes a prima facie case of intentional discrimination, the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiff at all times. Once the defendant has articulated a nondiscriminatory reason for its decision, the presumption of discrimination that arises from the plaintiff's prima facie case disappears and the plaintiff must have the opportunity to show that the defendant's proffered explanation is merely a pretext for discrimination.

Weigel v. Baptist Hosp., 302 F.3d 367, 377-78 (6th Cir. 2002) (internal citations omitted). "An employee can show pretext by offering evidence that the employer's proferred reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." Smith v. Chrysler Corp., 155 F.3d 799, 805-06 (6th Cir. 1998).

Plaintiff argues she has set forth a prima facie case of retaliation because she exercised her rights under the FMLA, was subjected to adverse employment decisions as a result of her leave, and was eventually terminated. During plaintiff's December 2009 episode of intermittent leave, plaintiff was subjected to two written warnings and a suspension. She claims these disciplinary actions are related to her FMLA leave. Plaintiff also notes defendant's human resources manager's testimony that she was "sympathetic with Laura, but, you know, you can only do that for so long." From this statement, plaintiff extrapolates that she was fired as a result of her need for intermittent FMLA leave.

Defendant argues plaintiff cannot set forth a prima facie case of retaliation because

she cannot show that she was engaged in protected activity. Defendant argues that she did not qualify for FMLA leave due to her own failure to provide the information necessary to cure her defective recertification and therefore her activity does not constitute protected activity. As set forth in the interference section above, plaintiff has set forth sufficient evidence to create a genuine issue of fact on this matter. Defendant also argues plaintiff could not establish a causal connection because she was terminated for absences only after she ignored the request to cure the defects of her recertification. However, plaintiff argues she submitted sufficient information for the recertification. Construing the pleadings and evidence in a light most favorable to plaintiff, plaintiff has come forward with sufficient evidence to create a genuine issue of material fact on her retaliation claim.

**Plaintiff's Intentional Infliction of Emotional Distress Claim**

To establish her claim of intentional infliction of emotional distress, plaintiff must establish: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Linebaugh v. Sheraton Michigan Corp., 198 Mich. App. 335, 342 (1993). She must show defendant's conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. Id. Whether the conduct at issue may reasonably be considered so extreme and outrageous as to allow recovery is a matter of law that should be initially decided by the court. Doe v. Mills, 212 Mich. App. 73, 92 (1995). However, if reasonable minds may differ, the question should be reserved for the trier of fact. Id.

Defendant argues plaintiff cannot prove any of the elements of her claim because defendant's actions in terminating plaintiff after nine unexcused absences do not constitute extreme and outrageous behavior. Defendant also argues there is no evidence that

14

defendant's actions caused plaintiff severe emotional distress. Defendant argues plaintiff has only been able to describe a minor depression and notes plaintiff has not explained any physical manifestation of the depression nor sought any treatment or counseling for the depression. Plaintiff argues she was depressed as a result of defendant's disregard of her FMLA rights at an extremely difficult time in her life. Plaintiff does not respond to defendant's argument that she has not shown any physical manifestation of the depression nor sought treatment. Construing the pleadings and evidence in a light most favorable to plaintiff, plaintiff has failed to come forward with sufficient evidence to establish the elements of her claim for intentional infliction of emotional distress. Defendant's request for summary judgment on plaintiff's intentional infliction of emotional distress claim is therefore granted.

**Mitigation of Damages**

Defendant argues plaintiff failed to mitigate her damages by seeking full-time work. The duty to mitigate "operates to prevent claimants from recovering for damages which they could have avoided through reasonable diligence." Grace v. City of Detroit, 216 Fed. Appx. 485, 488 (6th Cir. 2007), quoting Rasimas v. Michigan Dept. Of Mental Health, 714 F.2d 614, 623 (6th Cir. 1983) (internal quotations omitted). The reasonableness of a plaintiff's effort "should be evaluated in light of the individual characteristics of the claimant and the job market." Id.

Defendant argues plaintiff has not made a reasonable effort to seek full-time work. At the time of her deposition, plaintiff testified that she had only applied for a job at Walmart. She testified that she looked in the Argus Press newspaper for work, but did not apply for any positions advertised, including the cleaning and household positions identified

by defendant. Plaintiff responds by emphasizing that the test is applied "in light of the individual characteristics of the claimant." Plaintiff claims she had to care for her husband for another 13 months after her termination so that even if she was able to find work, she would not have been able to keep the job because of the necessity of caring for her husband. She also states that she has continued to look for work since her husband's death and, since April 2011, has applied at Meijers, WalMart, West Hickory Haven, MediLodge of Milford, and Mr. Kleen Maintenance. Construing the pleadings and evidence in a light most favorable to plaintiff, plaintiff has come forward with sufficient evidence to establish a genuine issue of material fact as to whether her job-seeking efforts were reasonable. Defendant's request for summary judgment on its failure to mitigate defense is therefore denied.

CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED in part and DENIED in part.

Dated: March 23, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 23, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

16